MANUFACTURERS' LIABILITY INSURANCE COMPANY OF NEW JERSEY, Respondent, *v.* McQUADE STEVEDORING COMPANY, Appellant.

First Department, March 17, 1922.

**Insurance — indemnity insurance — action to recover premiums based on payroll — amount of payroll based on estimate of plaintiff's witness without facts to support it — verdict not supported by competent evidence — burden was on plaintiff.**

In an action to recover premiums on policies of indemnity insurance, which were based on the payroll of the defendant, a verdict in favor of the plaintiff was not supported by competent evidence, where it appeared that there was no direct evidence as to the payroll of the defendant, but that plaintiff's auditor testified what the payroll was or should have been from his own experience in the same line of business as that in which the defendant was engaged, without sta ing how or upon what facts he ascertained the amount. A verdict so reached rests upon surmises and gues ·es and cannot stand.

The burden was upon the plaintiff to establish by competent evidence the payroll of the defendant on which the premiums for insurance were based.

APPEAL by the defendant, McQuade Stevedoring Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 2d day of December, 1920, upon the verdict of a jury; also from an order entered in said clerk's office on the 26th day of November, 1920, adding interest to the verdict, and also from an order entered in said clerk's office on the 9th day of December, 1920, denying defendant's motion for a new trial made upon the minutes.

*Almy, Van Gordon & Evans* [*Don R. Almy* of counsel; *William S. Evans* with him on the brief], for the appellant.

*John P. Everett* [*J. Van Vechten Olcott* of counsel], for the respondent.

GREENBAUM, J.:

The action is brought to recover premiums upon three separate policies of indemnity insurance. The first was a policy under the New York Workmen's Compensation Law, under which the defendant agreed to pay premiums based on its payroll, at the rate of $12.60 per each $100 of payroll for the stevedores and various other employees consisting of its executive officers, clerical force, draftsmen, salesmen, drivers, helpers, chauffeurs and others.

The second policy was one under the New Jersey Workmen's Compensation Law, which is substantially like the first, excepting that the rate is $4 for each $100 of the payroll for stevedores and proportionately smaller sums for other classes of employees.

The third policy was a public liability policy, the premiums of which were also determinable by the payroll of the defendant. Each policy was dated March 31, 1917, and by its terms expired March 31, 1918. The policies continued in effect until August 28, 1917, on which date they were canceled.

The controversy between the parties is as to whether a correct audit of the payrolls had been made.

The plaintiff's auditor testified that he called at the defendant's place of business, met a Mr. Geib, who stated that he was the manager and secretary of the defendant, who gave him certain time sheets, which he claimed were not the payrolls, and that he was unable to make the audit provided for under the policies in suit; that he then discussed the question of the preparation of the audits with Geib, stating " that he would try to either install a new system or get Mr. McQuade's records in order to check up these time sheets;" that he made an appointment with Mr. Geib to go over the matter of adopting a new system, but that the latter failed to keep his appointment, as well as other appointments that had been made, on the plea that he was too busy to attend to them. The auditor testified that, in September, when he called at the office of the defendant for the purpose of making an audit, he asked Mr. Geib, " ' What are the correct payrolls? ' He said he could not give me the correct amounts but he could estimate very closely. I asked him what his estimate was. He said his payrolls were running between $15,000 and $20,000 a week — a hundred dollars more or less."

As a matter of fact a bill for premiums had been sent to defendant

on July 23, 1917, based upon an audit of June 25, 1917, for $2,221.86. That bill was returned to the plaintiff on August sixth, on the ground that it was incorrect in that the payrolls were not properly distributed. On September 14, 1917, plaintiff made the correction requested, and sent its bill for $2,943.71. A final bill was sent upon the cancellation in the sum of $2,509.57. The defendant refused to pay this bill upon the ground that under the policies it was entitled to be credited with certain dividends. Thereafter this action was commenced, and the claim of the plaintiff then was for $29,263.12.

There are two questions raised on this appeal. One, that there was no competent evidence justifying the verdict of the jury; and the other, that the addition of interest to the amount of the verdict was improper.

The testimony presented in behalf of the plaintiff was most extraordinary. One Carroll, the auditor of the plaintiff, was permitted to testify what the payroll was or should have been from his own experience. He testified that he had made some kind of a memorandum. He was then asked: "What did you make that memorandum from? From some figures you had yourself prepared? Where did you get those figures? A. Figures that I had prepared. Q. From what? A. From my previous experience in the stevedoring business." He then testified that the exact payroll under one of the policies was $182,454.45. In the same way he testified as to the payrolls applicable to the other policies. How or upon what facts he ascertained the amounts to which he testified, it is impossible to gather from the testimony. After the witness had been cross-examined, the plaintiff's counsel resumed his examination and elicited from him that he made up the amounts from the estimates made by Geib in September that the weekly payrolls were from $15,000 to $20,000. In what way based upon such estimates the auditor reached the figure of upwards of $29,000 as the amount due for premiums was not explained. The jury brought in a verdict for $9,821.04. In other words, it did not accept the opinion of the auditor. Upon what facts the jury based its verdict it is impossible to say.

The learned counsel for the plaintiff frankly admitted upon the argument that he did not know how the jury reached the amount of its verdict. We do not see how the verdict can stand, notwithstanding that the defendant presented no data in its behalf as to how much the payrolls were. It was claimed that the payroll slips were lost, but it does not appear whether the plaintiff resorted to an examination before trial of the defendant and of its books and papers. Resort might have been had to the check books

used by the defendant and McQuade, the defendant's president, who, the testimony shows, sometimes paid the payrolls with his personal checks. There was not the slightest attempt made by the defendant to show what its payrolls were. But however criticisable the conduct of the defendant may be, the burden was upon the plaintiff to make out its case.

The verdict rests upon surmises and guesses and necessitates a reversal of the judgment.

The judgment and order should be reversed and a new trial ordered, with costs to the appellant to abide the event.

CLARKE, P. J., LAUGHLIN, SMITH and MERRELL, JJ., concur.

Judgment and order reversed and new trial granted, with costs to appellant to abide the event.